UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
THOMAS ZICH, :
: Case No. 3:18-cv-2515
    Petitioner, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 16, 17, 18, & 19]
JAMES HAVILAND, Warden, :
Allen Correctional Institution, :
:
    Respondent. :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Thomas Zich petitions for 28 U.S.C. § 2254 habeas corpus relief from his 15-year-to-life sentence for the 1991 murder of his wife Mary Jane Zich.[1] Petitioner Zich argues that five criminal proceeding constitutional errors justify relief, including (1) an unconstitutional 16-year delay between his crime and criminal proceedings, (2) ineffective assistance of trial counsel, (3) state prosecutorial *Brady v. Maryland* violations, (4) the constitutional inadequacy of Ohio's post-conviction relief statute, and (5) the state courts' refusal to address Zich's actual innocence claim.[2]

    Magistrate Judge George J. Limbert filed a Report and Recommendation ("R&R") finding that each of Petitioner Zich's five relief grounds should be denied.[3] Zich objects on all five grounds,[4] and Ohio replies.[5] Zich also has requested a Certificate of Appealability,[6] which Ohio opposes.[7]

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 15.
[4] Doc. 16.
[5] Doc. 17.
[6] Doc. 18.
[7] Doc. 19.

Case No. 3:18-cv-2515
Gwin, J.

For the following reasons, the Court **OVERRULES** Zich's objections to the R&R, **ADOPTS** the R&R, and **DENIES** Zich's § 2254 petition. The Court also **DENIES** Zich's request for a Certificate of Appealability.

I. BACKGROUND

The case record is recounted in great detail in the R&R, and the Court here describes only the most relevant background. This description is taken directly from the Ohio Court of Appeals decision affirming Petitioner Zich's sentence.[8] Under AEDPA, these facts are presumed to be correct.[9] Zich does not show good reason to contest these facts, and this Court adopts them.

*A. Mary Jane Zich's Murder*

On December 18, 1991, police discovered Mary Jane Zich's body in the trunk of her car outside the Oak Street Tavern in east Toledo.

Petitioner Zich and Mary Jane Zich married in 1990 and lived together with Mary Jane Zich's three-year-old daughter Desiree. From the start, the marriage was troubled. At trial, Mary Jane Zich's friend testified that she saw injuries to Mary Jane Zich suggesting domestic violence. And both Petitioner Zich and Mary Jane Zich engaged in extra-marital affairs in the latter half of 1991—Mary Jane Zich with a man named Kenny Montano and Petitioner Zich with a woman named Luanna Urbanski.

A month before the murder, in November 1991, Petitioner Zich told Urbanski after a date that he planned to divorce Mary Jane Zich and that she would leave their marital home

---

[8] *State v. Zich*, No. L-09-1184, 2011 WL 6318991, at *1–8 (Ohio Ct. App. 6th Dist. Dec. 16, 2011).
[9] 28 U.S.C. § 2254(e)(1).

-2-

Case No. 3:18-cv-2515
Gwin, J.

by Thanksgiving. But Zich stated that in prior divorces, he had been "taken to the cleaners" and that he "wasn't going to let that happen again."

The week of Thanksgiving 1991, the conflict between Petitioner Zich and Mary Jane Zich escalated. Petitioner Zich asked Mary Jane Zich's family members for information about her lover Kenny Montano. Petitioner Zich also tailed Mary Jane Zich and Montano with his car.

On Thanksgiving night, Mary Jane Zich left her daughter Desiree with her friend Sandy Schwartz and spent the night with Montano at a hotel. The following day, Mary Jane Zich checked out of the hotel and picked up Desiree, telling Schwartz that she planned to ask Petitioner Zich for a divorce. Neither Montano nor Schwartz ever saw or spoke with Mary Jane Zich again, despite repeated search and contact attempts.

Also around Thanksgiving, Petitioner Zich hurriedly left Mary Jane Zich's daughter Desiree with a babysitter, Cheryl Zimmerman, who barely knew Petitioner or Mary Jane Zich. Zimmerman did not know three-year-old Desiree at all. Petitioner Zich said he needed to take care of something "very important." Zich returned four hours later and quickly left with Desiree.

Also around that time, Petitioner Zich solicited a ride home from a Free-Way Restaurant customer roughly 2.5 miles from where Mary Jane Zich's body was later discovered in her car parked outside the Oak Street tavern. In asking for the ride, Petitioner Zich claimed that he had locked his keys in his car but also refused a ride back to his car after he retrieved spare keys. After being dropped off at home, Zich took a "whole handful" of keys out of his pocket, unlocked his door, and went inside.

-3-

Case No. 3:18-cv-2515
Gwin, J.

Mary Jane Zich went missing after Thanksgiving. Between December 1, 1991, and December 18, 1991, the day Mary Jane Zich's body was discovered, Petitioner Zich told differing stories to Mary Jane Zich's friends and family about where she had gone. At first, Zich said that Mary Jane Zich had gone to Florida for rehab. He later claimed that she had said she was leaving only for an hour but never returned. When Petitioner Zich's extra-marital lover Luanna Urbanski asked him about Mary Jane Zich's whereabouts, Zich replied "trust me, she's not coming home."

Local witnesses reported Mary Jane Zich's car being parked outside the Oak Street Tavern for roughly three weeks in late November and early December 1991. Someone eventually broke into the car, drawing police attention and leading to the discovery of Mary Jane Zich's body in the car's trunk.

The Lucas County Coroner determined that Mary Jane Zich had been strangled, likely with rope. The Coroner could not determine the time of death, however, due to the freezing December weather that had stopped decomposition.

Police interviewed Petitioner Zich the night Mary Jane Zich's body was discovered. Although Zich admitted that he and Mary Jane Zich had a troubled marriage and that it was unusual for her to leave Desiree behind, Petitioner Zich denied involvement in Mary Jane Zich's murder. Zich stated that Mary Jane Zich had suddenly disappeared after receiving a phone call the day after Thanksgiving.

The investigation then stalled for 13 years.

B. *The Investigation Reopens*

In 2004, the Toledo Police Department cold case unit resumed the investigation after contact from one of Mary Jane Zich's family members. In 2007, police interviewed Petitioner

-4-

Case No. 3:18-cv-2515
Gwin, J.

Zich, and he contradicted several of his 1991 interview statements, including his earlier descriptions of his marriage troubles and Mary Jane Zich's habits of leaving Desiree with him.

On June 1, 2007, Lucas County indicted Petitioner Zich for Mary Jane Zich's murder nearly 16 years after her body's discovery. Petitioner Zich moved unsuccessfully to dismiss the indictment for excessive delay. At trial, the evidence recounted above was introduced. Further, the state trial court allowed three of Petitioner Zich's ex-wives to testify about how Zich physically abused and strangled them while they were married to him.

The jury found Petitioner Zich guilty of murder, and the court imposed a 15-year-to-life sentence.

### C. Zich Challenges His Sentence in State Court

On direct appeal, Zich raised pre-indictment delay and ineffective assistance of counsel claims.[10] The Ohio Court of Appeals denied each of Zich's claims and affirmed his conviction and sentence.[11]

Zich sought Ohio Supreme Court review.[12] While he presented an identical pre-indictment delay argument, he did not include the ineffective assistance of counsel claim in his Ohio Supreme Court filing.[13] The Ohio Supreme Court denied Zich leave to appeal.[14]

Petitioner Zich then moved for Ohio post-conviction relief in the Lucas County Court of Common Pleas.[15] With that motion, Zich argued that: (1) he was actually innocent of

---

[10] Doc. 7-1 at 203.
[11] *Zich*, 2011 WL 6318991, at *22.
[12] Doc. 7-1 at 630–36.
[13] *Id.*
[14] *State v. Zich*, 965 N.E.2d 311 (Ohio 2012) (Table).
[15] Doc. 7-1 at 484–513.

-5-

Case No. 3:18-cv-2515
Gwin, J.

Mary Jane Zich's murder; (2) the prosecution violated *Brady v. Maryland*; (3) his trial counsel was ineffective; and (4) Ohio's post-conviction statute was unconstitutional.[16]

The trial court declined to address Zich's actual innocence claim, as Zich did not allege a free-standing constitutional violation.[17] It then denied each of Zich's remaining post-conviction claims on the merits.[18]

Zich again appealed to the state court of appeals, raising his actual innocence and unconstitutional Ohio post-conviction relief arguments.[19] But he did not raise his Lucas County *Strickland* or *Brady* claims. The Ohio Court of Appeals affirmed the post-conviction relief denial.[20]

Petitioner Zich presented the same intermediate appeal issues to the Ohio Supreme Court.[21] The Ohio Supreme Court denied appeal leave.[22]

### D. Federal Habeas Proceedings

On October 31, 2018, Zich filed a timely 28 U.S.C. § 2254 habeas corpus petition in this Court.[23] On habeas review, Petitioner Zich again presents arguments related to (1) unconstitutional pre-indictment delay, (2) ineffective assistance of trial counsel, (3) state prosecutorial *Brady* violations, (4) the inadequacy of Ohio's post-conviction relief statute, and (5) the state courts' failure to address Zich's actual innocence claim.[24]

---

[16] *Id.*
[17] *Id.* at 487–88.
[18] *Id.* at 489–513.
[19] *Id.* at 517–18.
[20] *State v. Zich*, No. L-15-1263, 2017 WL 462598 (Ohio Ct. App. 6th Dist. Feb. 3, 2017).
[21] Doc. 7-1 at 361.
[22] *State v. Zich*, 84 N.E.3d 1063 (Ohio 2017) (Table).
[23] Doc. 1.
[24] *Id.*

-6-

Case No. 3:18-cv-2515
Gwin, J.

On April 30, 2020, Magistrate Judge Limbert submitted an R&R recommending rejection of each of Zich's five § 2254 claims.[25] Zich timely filed objections on each ground,[26] and Ohio replied.[27] Zich also has requested a Certificate of Appealability ("COA"),[28] which Ohio opposes.[29]

The Court now turns to Zich's R&R objections and COA request.

II. LEGAL STANDARD

A. *R&R Review*
This Court reviews *de novo* the substantively disputed R&R portions.[30] The parties waive review of the undisputed R&R portions.[31]

B. *Habeas Issue Preservation*
The Antiterrorism and Effective Death Penalty Act, or "AEDPA," affords Ohio courts the opportunity to first consider claimed violations of Ohio prisoners' federal rights before their judgments are federally challenged.[32] Before this Court will consider Zich's claims, he must show that he has already exhausted his state remedies by fairly presenting his claim in each appropriate state court, including a state supreme court with powers of discretionary review.[33]

---

[25] Doc. 15.
[26] Doc. 16.
[27] Doc. 17.
[28] Doc. 18.
[29] Doc. 19.
[30] *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).
[31] *Id.*
[32] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam).
[33] *O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999).

Case No. 3:18-cv-2515
Gwin, J.

"Naked assertions"[34] and "general allegations of the denial" of broad fair trial or due process rights are insufficient for fair presentment.[35] Rather, the petitioner must present particularized substantive claim arguments at each state review level.[36]

### C. Habeas Merits Review

For Petitioner Zich's preserved claims, AEDPA requires Zich to show that the challenged state court decisions were "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[37] AEDPA is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."[38] Accordingly, a state court decision must be not simply wrong but *objectively unreasonable* to justify § 2254 relief.[39]

### D. Certificates of Appealability

Habeas corpus petitioners are not entitled to appeal this Court's decision by right.[40] Rather, AEDPA requires that a § 2254 petitioner to first request and receive a COA before proceeding with an appeal.[41]

---

[34] *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).
[35] *Id.*
[36] *Id.*
[37] 28 U.S.C. § 2254(d).
[38] *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).
[39] *Williams v. Burt*, 949 F.3d 966, 974 (6th Cir. 2020).
[40] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).
[41] *Id.*

-8-

Case No. 3:18-cv-2515
Gwin, J.

To receive a COA, a petitioner must make a "substantial showing of the denial of a constitutional right."[42] This requires the petitioner to show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[43]

### III. DISCUSSION

#### A. *Prosecutorial Delay Claim.*

Petitioner Zich first claims that the roughly 16-year delay between the discovery of Mary Jane Zich's death and Petitioner Zich's murder prosecution violated his Fourteenth Amendment due process rights. Zich argues that physical and testimonial evidence was lost or destroyed, causing prejudice to his defense. The Ohio Court of Appeals disagreed,[44] as did Magistrate Judge Limbert.[45]

Zich's R&R objections repeat his Ohio-law focused petition arguments. But in this habeas action, the applicable preindictment delay standard comes from United States Supreme Court holdings rather than state law.[46] The closest on-point Supreme Court opinions are *United States v. Marion*, 404 U.S. 307, 324 (1971), and *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

*Marion* and *Lovasco* held that a § 2254 preindictment delay petitioner must show (1) intentional law enforcement delay to gain an improper advantage together with (2) actual prejudice.[47]

---

[42] *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (citing 28 U.S.C. 2253(c)(2)).
[43] *Miller-El*, 537 U.S. at 338 (citing *Slack*, 529 U.S. at 484).
[44] *Zich*, 2011 WL 6318991, at *9–13.
[45] Doc. 15 at 30–39.
[46] *White v. Woodall*, 572 U.S. 415, 419 (2014).
[47] *United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) (citing *Marion*, 404 U.S. at 324).

Case No. 3:18-cv-2515
Gwin, J.

Zich's briefs focus entirely on prejudice. The state courts and the R&R found that Zich had inadequately explained the destroyed evidence's prejudicial effect, especially given the prosecution's strong case. Zich's R&R objections merely rehash his initial petition arguments, and given that the R&R adequately dealt with them, the Court does not reexamine them here.

But even if Zich had been able to show prejudice, he cannot show intentional law enforcement delay to gain an improper advantage. Zich does not even allege deliberate prosecutorial delay. Zich comes closest in claiming that various government pre-trial witness selection decisions "had to be to distract Zich and make it difficult to prepare a defense."[48]

But even if it were on-point, this conclusory statement would fall short. "Bad faith" prosecutorial delay "requires an affirmative showing by the defendant; it cannot be implied from circumstantial evidence."[49] Zich has made no such affirmative showing here.

Zich tangentially raises additional due process claims regarding prosecution witness selection. Crucially, however, Zich fails to tie any of these purported due process violations to specific Supreme Court holdings. The Supreme Court has repeatedly cautioned federal courts not to construe its due process rulings too broadly.[50] Zich's highly generalized due process and fairness claims do not support § 2254 relief.

Reasonable jurists would not debate this outcome, and Zich is not entitled to a COA on this claim.[51]

B. *Ineffective Assistance of Counsel Claim.*

---

[48] Doc. 10 at 33.
[49] *United States v. Sanders*, 452 F.3d 572, 581 (6th Cir. 2006).
[50] *Stewart v. Winn*, 967 F.3d 534, 537 (6th Cir. 2020) (collecting cases).
[51] *Miller-El*, 537 U.S. at 338.

-10-

Case No. 3:18-cv-2515
Gwin, J.

Zich raises many ineffective trial counsel claims, including, among other things, counsel's failure to (1) request suppression of Zich's 2007 police interview, (2) seek grand jury transcript access, (3) adequately cross-examine several prosecution witnesses, (4) call additional defense witnesses, and (5) disrupt the prosecution's case timeline.

The R&R found that Petitioner Zich had not presented any of his ineffective assistance claims to the Ohio Supreme Court on direct or collateral review.[52] The Magistrate Judge accordingly recommended this Court find Zich's claims procedurally defaulted.[53]

Zich again objects, mostly repeating his petition. But, as the R&R concluded, Zich's arguments are procedurally defaulted. Zich failed to request Ohio Supreme Court review of any of his ineffective assistance claims.

True, Zich did repeatedly assert that "[t]he trial court erred by not addressing the issue of actual innocence and thereby violated Zich's 6th Amendment right to effective assistance of counsel."[54] But Zich's appellate arguments lacked necessary fair-presentation-worthy substance. While a petitioner "need not cite chapter and verse of constitutional law" to fairly present a claim to the final reviewing state court, Zich's "general allegations of the denial of rights" was insufficient to save the argument for habeas review.[55]

Zich's reliance on the so-called "outside evidence" rule to excuse his procedural default similarly fails. That doctrine allows federal review of a petitioner's outside-record based claim where a state court improperly declines to review that claim on procedural

---

[52] Doc. 15 at 40–46.
[53] *Id.*
[54] Doc. 7-1 at 361, 517–18.
[55] *Blackmon*, 394 F.3d at 400.

Case No. 3:18-cv-2515
Gwin, J.

grounds.[56] Here, by contrast, three of Zich's ineffective assistance claims were raised and rejected on direct review by the Ohio Court of Appeals before Zich failed to appeal them.[57] These direct review claims do not fit the outside evidence rule's scope.

Further, six of Zich's remaining seven ineffective assistance claims were denied on the merits by the Lucas County trial court on post-conviction review.[58] Zich did not appeal those rulings.[59] Because they were denied on the merits rather than on procedural grounds, the outside evidence rule does not apply.

In his post-conviction petition, the Ohio common pleas judge denied only Zich's grand jury transcript ineffective assistance claim on procedural grounds.[60] But the state court denied that claim only because Zich had already unsuccessfully raised it on direct review.[61] As stated above, Zich then defaulted the claim by failing to request Ohio Supreme Court review.

Further, Zich's grand jury claim would otherwise fail on the merits. Grand jury proceedings are secret, and defendants may access them only by showing a "particularized need" that "outweighs the policy of secrecy."[62] Zich's generalized speculation that the grand jury proceedings may "have been based upon defective evidence" does not clear that bar.

---

[56] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007).
[57] *Zich*, 2011 WL 6318991, at *19–21.
[58] Doc. 7-1 at 500–10.
[59] *Id.* at 361, 517–18.
[60] *Id.* at 509–10.
[61] *Zich*, 2011 WL 6318991, at *20–21.
[62] *Pitt. Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *Wilson v. Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017).

Case No. 3:18-cv-2515
Gwin, J.

Given the troubles Zich's grand jury transcript claim faces in a procedural vacuum, his claim is doomed in the § 2254 ineffective assistance of counsel context.[63]

This claim's disposition is not reasonably arguable, and Zich is not entitled to a COA.[64]

C. Brady *Claim*

Petitioner Zich next argues that the prosecution failed to provide him with known exculpatory evidence as required by *Brady v. Maryland*. Specifically, Zich claims that the state should have provided him with (1) the grand jury transcript; (2) potential witness and suspect police interview reports; (3) a carpet sample from Zich's residence; and (4) Mary Jane Zich's daughter Desiree's post-murder therapy records.[65]

The magistrate concluded that while Zich did raise these *Brady* claims in his Lucas County post-conviction petition, he failed to appeal the Lucas County Common Pleas denial of this *Brady* claim.

Petitioner Zich objects, arguing that he preserved this issue with this claim to the Ohio appellate courts:

> The trial court incorrectly refused to hear [Zich's] actual innocence claim which is also intertwined with his argument that the state committed violations of *Brady v. Maryland*. This violates Zich's constitutional right to Due Process of Law as created by the Fourteenth Amendment.[66]

Zich's generalized appellate argument did not preserve his current *Brady* claims. Zich's appeal argued for a general constitutional requirement that state collateral review

---

[63] *Harrington*, 562 U.S. at 105 (holding that *Strickland v. Washington*, 466 U.S. 668 (1984), and § 2254(d) combine to create a "doubly" deferential review standard in this context).
[64] *Miller-El*, 537 U.S. at 338.
[65] Doc. 1.
[66] Doc. 7-1 at 361, 517.

-13-

Case No. 3:18-cv-2515
Gwin, J.

proceedings address actual innocence claims.[67] Zich then simply claimed alongside that argument that the prosecution committed *Brady* violations. With this appellate claim, Petitioner Zich made no specific arguments about prosecutorial withholding of evidence favorable to him.[68]

The magistrate correctly concluded that Zich's *Brady* claims are defaulted. Zich's "naked assertions" that his *Brady* rights were violated were insufficient to fairly present his claims to the Ohio appellate courts.[69] This Court accordingly will not consider them.[70]

Reasonable jurists would not debate this outcome. Zich accordingly is not entitled to a COA.[71]

### D. Remaining Claims

Zich finally claims that Ohio's post-conviction process is unconstitutional because Ohio courts apply *res judicata* in the habeas corpus context and do not recognize actual innocence claims unsupported by an independent constitutional trial error.[72] The R&R concluded that these claims are inappropriate § 2254 petition subject matter.[73]

The Court agrees. Whatever infirmities Ohio's post-conviction procedure might have, a § 2254 petition "is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration."[74] The Sixth Circuit

---

[67] *Id.* at 542–46, 368–69.
[68] *Coleman v. Bradshaw*, 974 F.3d 710, 718 (6th Cir. 2020) (holding that a *Brady* claim requires the petitioner to show "(1) the withheld evidence was favorable to the petitioner, (2) the evidence was suppressed by the government, and (3) the petitioner suffered prejudice").
[69] *Blackmon*, 394 F.3d at 401.
[70] *Id.*
[71] *Miller-El*, 537 U.S. at 338.
[72] Doc. 1.
[73] Doc. 15 at 48–56.
[74] *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986)).

Case No. 3:18-cv-2515
Gwin, J.

has therefore repeatedly declined to "expand the scope" of § 2254 proceedings to "reach this second tier of complaints about deficiencies in state post-conviction proceedings."[75]

Zich's fourth and fifth claims based on constitutional minimum requirements of state post-conviction proceedings in general are paradigmatic examples of matters "collateral" to Zich's state confinement. Even if Zich's argument was meritorious, the appropriate remedy would not be relief from the state court judgment authorizing his incarceration. Zich's final claims are outside the scope of federal courts' circumscribed habeas corpus powers. These claims are accordingly denied, and because this outcome is not debatable, Zich is not entitled to a COA.[76]

IV.   CONCLUSION

For the stated reasons, the Court **OVERRULES** Petitioner's objections to the R&R, **ADOPTS** the R&R, and **DENIES** Petitioner's § 2254 petition. The Court also **DENIES** Zich's request for a Certificate of Appealability.

IT IS SO ORDERED

Dated: December 9, 2020            *s/   James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[75] *Id.*
[76] *Miller-El*, 537 U.S. at 338.

-15-